# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIZZIE M. SUTTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 3631 |
| v. ) | |
| ) | Judge John W. Darrah |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lizzie M. Sutton, filed an application for Title XVI supplemental security income benefits on June 26, 2000, alleging she was disabled beginning on May 27, 1999, due to pain in her back, ankles, and right knee. Plaintiff's application and her subsequent request for reconsideration were denied. Plaintiff filed a Request for Hearing; and on May 15, 2002, a hearing was held before Administrative Law Judge Robert C. Asbille. Plaintiff and a vocational expert, Thomas Dunleavy, testified at the hearing. Plaintiff was not represented by counsel at the hearing. On May 31, 2002, ALJ Asbille denied Plaintiff's disability application.

Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council, which was denied. In June 2005, Plaintiff filed a Complaint, requesting review of the final determination. Pending before this Court are cross-motions for summary judgment and Plaintiff's alternate Motion to Remand.

## BACKGROUND

Plaintiff was 41 years of age at the time of the ALJ's decision. She has an eighth grade education and no past relevant work.

On August 19, 2000, Plaintiff was examined by Dr. Angelito Bernardo, a Social Security Administration consulting internist. Plaintiff informed Dr. Bernardo that her feet and legs swell and "bother" her. She also has swelling in the right knee and chronic knee pain, in addition to back pain. Plaintiff indicated that there were days that she was unable to move out of bed because of pain. She stated she could walk approximately one to two blocks, stand stationary for fifteen to twenty minutes, and climb one to two flights of stairs.

Dr. Bernardo noted that Plaintiff was 65.5 inches tall and weighed 294 pounds. Plaintiff moved "quite slowly" from the chair to the examination table, grimacing when she put pressure on her right knee. Plaintiff's right joint was swollen, and she had decreased range of motion in the right knee joint from 150 to 110 degrees due to pain. There were no anatomical abnormalities of Plaintiff's spine, but she did have spasms on the lumbosacral region. There was decreased range of motion of the LS spine from 90 to 80 degrees because of the spasm and pain. Plaintiff walked with a mild limping gait.

Plaintiff had mild difficulty walking on toes, walking on heels, and tandem walking. Plaintiff had mild difficulty squatting and rising and had mild difficulty walking fifty feet because of knee joint pain. An X-ray of Plaintiff's right knee showed slight narrowing at the medical joint compartment with sclerosis at the articulating surfaces. Findings suggested mild to moderate osteoarthritis and an otherwise negative study.

On November 9, 2000, Plaintiff was seen at the emergency room of Cook County Hospital for complaints of lower back pain. During the hospital visit, Plaintiff complained of lower back and right leg pain. It was noted that Plaintiff was obese and had right knee pain.

On December 19, 2000, Plaintiff engaged in physical therapy at Cook County Hospital. Plaintiff complained of right leg pain, sharp pain in her mid and low back, and sharp pain in her right knee.

On May 2, 2001, Plaintiff was treated at ACHN/FANTUS Health Center. The records note degenerative joint disease, chest pain, and shortness of breath. X-rays taken in April 2001 demonstrated knee abnormalities, including patellar osteophysis and facet sclersis and osteophytes of the lumbar spine. Plaintiff was noted as having 2+ pitting edema in her extremities, post-traumatic degenerative changes in the knee, and leg edema secondary to obesity. Plaintiff was prescribed Tramadol for pain. On May 8, 2002, Dr. Fadi Saad of Cook County Hospital wrote, in a "to whom it may concern" letter, that Plaintiff suffered from advanced degenerative joint disease in her knee, back, and ankle and was unable to work.

On May 15, 2002, an administrative hearing on Plaintiff's claim was held. At the beginning of the hearing, ALJ Asbille informed Plaintiff that she had a right to an attorney and that there were also non-attorney representatives that represent social security claimants. He informed Plaintiff that she was not required to have an attorney but that "a lot of people feel that it is helpful to have somebody sit beside them and help them present their case." He informed Plaintiff that if she wanted more time to find an attorney, a continuance would be granted and that the continuance would not be held against her. Because Plaintiff was seeking supplemental security income, Plaintiff may have been able to get legal assistance. In addition, some private attorneys take such claims; however, the

ALJ did not know "what their financial arrangements" were. "[G]enerally you sign a contingency contract, and you're not required to pay anything unless they win the case; and then it's up to you to work out the method of payment." ALJ Asbille asked Plaintiff if she wanted to "go ahead today and represent [her]self or would [she] like more time to find an attorney?" Plaintiff stated that she would "go and represent [her]self."

Plaintiff testified that she was 5'6" tall and weighed 324 pounds. She was unmarried and presently living with her mother. Plaintiff did not drive and never had a driver's license. Plaintiff walked with a quad cane. Plaintiff was not working and had never worked. Plaintiff was unable to work because it was "hard for [her] to get around," and she could not move around and get out of bed. She had pain in her back, ankles, and right knee. The pain in her knee had existed for two years and was "about an eight." Her knee swells, and she took water pills to relieve the swelling.

Plaintiff had trouble sleeping and did not help with the housework because it "bothered" her to move around. Her typical day consisted of "sitting around the house." She elevated her leg twice a day for "not too long." She believed she could stand for approximately fifteen to twenty minutes and could sit in one position for approximately a half an hour. If she sat too long, she became stiff. She had trouble climbing stairs and bending over to pick things up. She could lift a gallon of milk and was able to use her fingers to button and unbutton buttons, to operate a zipper, and to use a pen or pencil. At that time, she was taking the following medications: Ibuprofen, Silinac, Tremodol, and Acetaminophen.

Thomas Dunleavy, a vocational expert ("VE"), also testified at the administrative hearing. When asked the hypothetical question – considering an individual of Plaintiff's age, education, and work experience, in addition to being able to lift twenty pounds occasionally and ten pounds

frequently; standing and walking no more than two out of eight hours with a maximum of thirty minutes at a time; performing the posturals on an occasional basis with the exception of not climbing ladders, ropes or scaffolds; and not working at unprotected heights or around dangerous moving machinery – he opined that there would be jobs for such an individual in the Chicago metropolitan area. For example, there would be approximately 8,000 small product assemblers, 4,000 hand packagers, and 3,000 sorters and weighers. Given the same hypothetical as above, a person with the additional limitations of standing two out of eight hours a day and sitting for less than six out of eight hours a day would be precluded from full-time employment. In addition, the "situation" would be worse if the individual needed to rest occasionally because of pain or discomfort.

On May 31, 2002, the ALJ ruled that Plaintiff was "not disabled," finding that Plaintiff remains able to perform work consistent with the VE's testimony.[1]

## ANALYSIS

An ALJ's findings constitute the final decision of the Commissioner of the Social Security Administration if the Appeals Council finds no basis for further review. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (*Smith*). Under such circumstances, the decision of the ALJ is the decision reviewed by the district court. *Ears v. Secretary of the Dept. of Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). In this review, the district court examines the entire record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000) (*Powers*). The ALJ's decision will not be reversed if it is supported by substantial evidence, which is evidence

---

[1]The ALJ's relevant specific findings are discussed in the analysis of each of Plaintiff's arguments.

" a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Powers*, 207 F.3d at 434.

In order to qualify for disability benefits, a claimant must be "disabled" under the Social Security Administration. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (*Briscoe*). The determination of whether a claimant suffers from a disability as defined in the Social Security Act is conducted through a five-step inquiry, evaluated in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P, App.1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir 1995).

A negative answer to any of the inquiries, other than step 3, ends the inquiry and leads to the determination that the claimant is not disabled. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (*Clifford*). The claimant has the burden of proof for steps 1 through 4. The Commissioner has the burden of proof for step 5. *Clifford*, 227 F.3d at 868.

Plaintiff first argues that the ALJ erred by not giving Plaintiff sufficient information to constitute a valid waiver of counsel.

A claimant has a statutory right to counsel at a disability hearing. 42 U.S.C. § 406; 20 C.F.R. § 404.1700. A claimant may waive her right to counsel if properly informed of the right to have counsel. *See Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (*Binion*). To ensure a valid waiver of counsel, the ALJ must explain to a *pro se* claimant: (1) the manner in which an attorney can aid

in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney's fees to 25 percent of past due benefits and required court approval of fees. *See Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (*Thompson*).

As noted above, ALJ Asbille informed Plaintiff that she had a right to counsel and that many people find an attorney helpful. He also explained that free legal aid may be available, but he did not know "what their financial arrangements" were but that generally there was a contingency contract involved. ALJ Asbille did not discuss in what manner an attorney could be helpful or the limitation on an attorney's fee to 25 percent of past due benefits and required court approval of fees.

Defendant argues that a notice of hearing that contained information regarding how an attorney may help the Plaintiff and also contained a leaflet entitled "Social Security and Your Right to Representation" sufficiently informed Plaintiff of her right to counsel. However, the ALJ has a duty to make an effort to *explain* the above-required matters. *See Binion*, 13 F.3d at 245; *Thompson*, 933 F.2d at 584-85. Contrary to Defendant's argument, receipt of a notice containing information regarding a claimant's right to counsel is not sufficient, in and of itself, to establish a valid waiver of her right to counsel. *See Thompson*, 933 F.2d at 584-85 (ALJ failed to adequately discuss the benefits of legal representation or the possibility of contingency arrangements for claimant who received notice containing examples of how an attorney could assist and information regarding contingency fees and limitations of fees). Furthermore, ALJ Asbille did not question Plaintiff, who only has an eighth grade education and has never worked, if she received, read, and understood the notice and leaflet.

Based on the above, Plaintiff did knowingly and intelligently waive her right to counsel. However, a claimant is not entitled to a remand based on inadequate notice of the right to representation unless the ALJ failed to develop a full and fair record. *See Binion*, 13 F.3d at 245.

An ALJ's duty to develop a full and fair record when a claimant proceeds *pro se* "is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Binion*, 13 F.3d at 245. When the claimant is *pro se*, "the ALJ has a duty scrupulously and conscientiously to probe into, inquire of and explore for all of the relevant facts . . . ." *Binion*, 13 F.3d at 245 (internal quotes omitted). If the claimant did not give a valid waiver of counsel, the duty is on the Commissioner to demonstrate that the ALJ adequately developed the record. *Binion*, 13 F.3d at 245. Factors considered in determining whether the ALJ developed a full and fair record include: (1) whether the ALJ obtained all of the claimant's medical and treatment records; (2) whether the ALJ elicited detailed testimony from the claimant at the hearing, *i.e.*, probing into relevant areas, including medical evidence on the record, medications, pain, daily activities, the nature of all physical and mental limitations; and (3) whether the ALJ heard testimony from examining or treating physicians. *See, e.g., Binion*, 13 F.3d at 245. Usually, a significant omission is required before it can be found that the ALJ failed to assist the *pro se* claimant in developing a full and fair record. *See Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

Here, the ALJ obtained all of Plaintiff's medical and treatment records. However, the ALJ dismissed Plaintiff's physician's most recent statement of Plaintiff's disability. When discussing the statement, the ALJ stated that he disagreed with the treating physician's conclusion that Plaintiff is disabled based on the degenerative joint disease in her knee. The ALJ did not address the treating physician's statement concerning Plaintiff's degenerative joint disease in her back and ankle and any

effect of the combination of the joint disease in the knee, back, and ankle. Furthermore, the ALJ concluded that Plaintiff's functional limitations were essentially confined to the lower extremities, discounting Plaintiff's treating physician's diagnosis of degenerative joint disease in her back. "An ALJ has a duty to solicit additional information to flesh out an opinion for which medical support is not readily discernable." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004); *Smith*, 231 F.3d at 437-38 (ALJ's duty to develop the record includes soliciting updated medical records when ALJ did not afford the treating doctor's opinion controlling weight on that basis). The ALJ also discounted an August 2000 X-ray of Plaintiff's right knee without soliciting any updated X-rays.

The ALJ also elicited testimony from Plaintiff. While the ALJ asked Plaintiff multiple questions concerning her alleged disability, the ALJ did not ask Plaintiff any questions relating to the medical evidence on the record. In addition, the ALJ failed to clarify Plaintiff's answers. For example, Plaintiff testified that her pain in her knee was an "eight" when questioned how bad the pain was in her knee; the ALJ did not clarify what an "eight" meant. Plaintiff also testified that she had to elevate her legs at least twice a day for "not too long"; the ALJ did not clarify what "not too long" meant. The ALJ did not receive any testimony from Plaintiff's treating physician or any other physician that had treated Plaintiff. *See Thompson*, 933 F.2d at 587 (more thorough questioning of claimant and ordering additional examinations would have been appropriate to fully and fairly develop the record of unrepresented claimant).

Lastly, after discussing the VE's qualifications, the ALJ asked the VE only two hypotheticals. No other questions of the VE were asked, including whether or not there was any inconsistency between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). "[A]s part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the

record, as to whether or not there is "a conflict between the VE's testimony and the DOT. SSR 00-4p; 65 FR 75759, 75760. Defendant concedes that the ALJ failed to comply with SSR 00-4p but argues that any error was harmless. However, it is unclear whether the ALJ found Plaintiff was capable of "sedentary" or "light" work. The possible employment positions the VE testified that Plaintiff could perform include both "light" and "medium" work. Accordingly, the ALJ's failure to comply with SSR 00-4p cannot be deemed harmless.

Based on the above, the ALJ failed to fully and fairly develop the record under the heightened duty to an unrepresented claimant. Plaintiff has the right to present the best evidence she has to prove her claim. *See Thompson*, 933 F.2d at 587. Accordingly, the decision of the ALJ is vacated; and this proceeding is remanded for further proceedings consistent with this opinion. In light of this ruling, the parties' additional arguments need not be addressed.

For the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment are denied. Plaintiff's alternate Motion to Remand is granted. The decision of the ALJ is vacated, and this proceeding is remanded for further proceedings consistent with this opinion.

Dated: 2-16-06

JOHN W. DARRAH
United States District Court Judge